UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:17-cv-23271-RAR

IAG ENGINE CENTER CORP. and THOSE
CERTAIN SUBROGATING UNDERWRITERS
SUBSCRIBING TO A CERTAIN POLICY OF
INSURANCE EFFECTED

    Plaintiffs,

v.

CAGNEY GLOBAL LOGISTICS INC.
f/k/a/ WILDERNEST LOGISTICS
SOLUTIONS, INC., d/b/a CAGNEY
GLOBAL LOGISTICS; CAGNEY
EXPRESS, INC. and NOLAN
TRANSPORTATION GROUP, LLC.

    Defendants.
_____/

CAGNEY GLOBAL LOGISTICS INC.
f/k/a WILDERNEST LOGISTICS
SOLUTIONS, INC., d/b/a CAGNEY
GLOBAL LOGISTICS,

    Defendant/Third-Party Plaintiff,

v.

NOLAN TRANSPORTATION
GROUP, LLC; and
AJS TRANSPORT CORP,

    Third-Party Defendants.
_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT CAGNEY GLOBAL LOGISTIC INC'S MOTIONS TO DISMISS

**THIS CAUSE** came before the Court on a Motion to Dismiss Plaintiffs' First Amended

Complaint filed by Defendant, Cagney Global Logistic Inc.'s ("Cagney Global"), on March 5,

2020.  ECF No. [89].  Plaintiffs, IAG Engine Center Corp. ("IAGEC"), and certain subrogating underwriters subscribing to a policy of insurance (UM No. B0572NA14L060) effected through Tyser North America ("Underwriters"), filed a Response in Opposition to Cagney Global's Motion to Dismiss on April 2, 2020.  ECF No. [94].  On April 9, 2020, Cagney Global timely filed a Reply to Plaintiffs' Response in Opposition of Cagney Global's Motion to Dismiss.  ECF. No. [96].  Plaintiffs subsequently filed, on April 17, 2020, a Sur-Reply Opposing Cagney Global's Motion to Dismiss.  ECF No. [100].  After a review of the pertinent portions of the record and the relevant authorities, for the reasons stated below, it is hereby **RECOMMENDED** that Cagney Global's Motion to Dismiss, ECF No. [89], be **GRANTED IN PART AND DENIED IN PART**.

## I.   BACKGROUND

### A.  The Original Complaint

On June 30, 2017, IAGEC filed a civil action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, against Defendants, Cagney Global Logistics, Inc. f/k/a/ Wildernest Logistics Solutions, Inc., d/b/a Cagney Global Logistics and Cagney Express Inc. ("Cagney Global").  ECF No. [1-2] at 4.  On August 29, 2017, Defendants filed a Notice of Removal of Civil Action, thereby removing the civil action to the United States District Court for the Southern District of Florida.  ECF No. [1] at 2.  That action involved a claim by IAGEC against Defendants for the damages to a GE CF6-80C2 Jet Aircraft Engine ("Engine") during interstate transportation from Michigan to Florida.  *Id.*; ECF No. [1-3] ¶ 6.

According to the Original Complaint, in July 2015 IAGEC's manager contacted Cagney Global and arranged for transportation of the Engine from Oscoda, Michigan to Miami, Florida. *Id.* ¶ 7.  The Original Complaint alleges that Cagney Global was acting as an interstate motor carrier subject to the Interstate Commerce Act, 49 U.S.C. §14706.  *Id.* ¶ 8.  Cagney Global, after

accepting the Engine, arranged to have its agent, AJS Transport Co. ("AJS Transport"), take possession of the Engine. *Id.* ¶¶ 10–11. Cagney Global loaded the Engine on the truck trailer. *Id.* ¶ 12. The height of the Engine combined with the height of the flatbed truck trailer resulted in a load that was greater than the legal limit of 13 feet and 6 inches for use on the highway in the State of Michigan. *Id.* The truck loaded with the Engine was too high to pass under a highway bridge at the Melita Road overpass; however, the driver proceeded under the bridge at a high rate of speed which resulted in irreparable damage to the Engine. *Id.* ¶ 16.

The Original Complaint alleged two counts of action: Liability under Carmack Amendment (Count I); and Negligence (Count II). *Id.* ¶¶ 19, 26. Regarding Count I, IAGEC alleges Cagney Global is strictly liable to it for the destruction of the Engine, which was damaged in the amount of $4,359,343.91. *Id.* ¶¶ 22–24. Count II, which is plead in the alternative, alleges that Cagney Global had a duty to use reasonable care in the transportation of the Engine. *Id.* ¶¶ 27–28. Plaintiff claims Cagney Global failed to use reasonable care in: (1) the selection of the driver to operate the truck; (2) selecting a vehicle that would accommodate the height of the Engine; (3) planning the route for the Engine that would allow it to be transported to its intended destination without sustaining damage; and (4) the operation of the truck upon which the Engine was loaded. *Id.* ¶¶ 29–32. Plaintiffs, IAGEC, sought to recover damages. *Id.* ¶ 1.[1]

### B. Notice of Bankruptcy and Automatic Stay

On October 27, 2017, Cagney Global filed a Notice of Bankruptcy and Automatic Stay. ECF No. [32]. The Notice informed that on October 19, 2017, Cagney Global filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas, under Case No.

---

[1] On September 5, 2017, Cagney Global Logistics Inc. and Cagney Express Inc., filed their respective Answers and Affirmative Defenses to Plaintiff's Complaint. ECF Nos. [7], [8].

17-33935-HDH-7. *Id.* at 2. On October 31, 2017, the District Court issued an Order granting the Notice of Bankruptcy and determining that the entire proceeding should be stayed. ECF No. [33].

On March 1, 2019, IAGEC filed an Amended Motion to Partially Lift Automatic Bankruptcy Stay and to Re-open Terminated Case, and Memorandum of Law in Support Thereof. ECF No. [36].[2] IAGEC and Cagney Global came to an agreement with the bankruptcy trustee ("Trustee") that was filed in the United States Bankruptcy Court for the Northern District of Texas. The Bankruptcy Court entered an Agreed Order on January 31, 2019. ECF No. [36-2]. In the Agreed Order, the Bankruptcy Court ordered that "the automatic stay is modified to allow IAG[EC] to proceed in the Florida Litigation to liquidate its claim therein and proceed to collect against insurance proceeds only." *Id.* at 2. The District Court granted the motion to lift the stay. ECF No. [37].

### C. Third-Party Defendants and Ratification In The Instant Action.

On September 18, 2017, Cagney Global filed a Third-Party Complaint against Third-Party Defendants, Nolan Transportation Group, LLC ("Nolan") and AJS Transport Corp. ("AJS Transport"). ECF No. [10]. On May 16, 2019, Nolan filed a Motion to Dismiss Third Party Complaint and Incorporated Memorandum of Law arguing that Cagney Global failed to state a claim for which relief can be granted. ECF No. [41]. On August 22, 2019, Cagney Global filed a Motion for Leave to File First Amended Complaint and Memorandum of Law in Support Thereof. ECF No. [56]. Cagney Global sought to join Nolan as a Defendant. *Id.* at 1.

---

[2] On February 15, 2019, Plaintiff, IAGEC, filed a Motion to Lift Automatic Bankruptcy Stay and to Re-open Terminated Case. ECF No. [34]. The Court denied the Motion without prejudice for failing to indicate whether Defendants agreed with the relief requested, and for failure to incorporate a memorandum of law citing supporting authorities. ECF No. [35].

4

On December 11, 2019, IAGEC filed a Notice of Ratification, providing notice to those Underwriters. ECF No. [71]. On January 10, 2020, Cagney Global filed a Motion to Strike IAGEC's Notice of Ratification and Motion to Dismiss Plaintiff's Complaint. ECF No. [75]. On January 21, 2020, IAGEC filed a Supplemental Notice of Ratification of Plaintiff's standing to bring an action on behalf of Underwriters. ECF No. [78].

The District Court heard argument on the outstanding motions on January 23, 2020 ("Hearing"). ECF No. [80]. At the Hearing, the Court also addressed IAGEC's Amended Motion for Leave to File Amended Judgment, ECF Nos. [77], [81] at 1.

### D. The District Court's Omnibus Order

On January 24, 2020, the Court issued an Omnibus Order regarding: (1) Nolan's Motion to Dismiss Third Party Complaint, ECF No. [41]; (2) Plaintiff's Motion for Leave to file a First Amended Complaint, ECF No. [56]; and (3) Defendant/Third-Party Plaintiff's Motion to Strike, ECF No. [75]. *See* ECF No. [81]. The Omnibus Order granted in part IAGEC's Amended Motion for Leave, ECF No. [77], and denied as moot IAGEC's Motion for Leave, ECF No. [56]. ECF No. [81] at 2. In this Omnibus Order, the District Court clarified that the amended complaint adding Underwriters as a plaintiff would relate back to the Original Complaint. *Id.* The Omnibus Order also instructed IAGEC that the new pleading must ensure that the claims are clearly delineated regarding how each claim is structured on behalf of each Plaintiff. *Id.* at 3.

Finally, the Omnibus Order denied Cagney Global's Motion to Strike, ECF No. [75], as moot because the Court was giving Plaintiff leave to file an amended complaint. *Id.* Although IAGEC's Supplemental Notice of Ratification, ECF No. [78], cured the deficiencies originally determined in IAGEC's Notice of Ratification, ECF No. [71], the District Court determined the issue was of no moment because Underwriters were being named as a plaintiff in the amended

pleading. *Id.* The Omnibus Order also adds Nolan as a named Defendant, which dispensed with the need to implicate AJS Transport in the case. *Id.* at 3–4. Consequently, the Third-Party Complaint, ECF No. [10], was dismissed without prejudice; and Nolan's Motion to Dismiss, ECF No. [41], and AJS' Motion for Summary Judgment, ECF No. [45], were denied as moot. *Id.* at 4.

### E. The First Amended Complaint

On February 7, 2020, Plaintiffs, IAGEC and Underwriters, filed a First Amended Complaint alleging a claim for the destruction of a GE CF6-80C2 Jet Aircraft Engine ("Engine") during interstate transportation. ECF No. [84]. The First Amended Complaint alleges five legal causes of action against Defendants Cagney Global[3] and Nolan. *Id.* First, Plaintiffs allege that Cagney Global is strictly liable to IAGEC under the Carmack Amendment for the amount of its losses over and above the amount paid to it by Underwriters; and strictly liable to Underwriters for the amount they paid to IAGEC (Count I). *Id.* ¶¶ 34–35. Second, Plaintiffs allege Cagney Global is liable for damages based upon Cagney Global's actions engaging in an inherently dangerous activity (Count II). *Id.* ¶ 38. Third, Plaintiffs allege Cagney Global was negligent through its employees and agents: Nolan, AJS Transport, and the driver of the truck for which the Engine was loaded (Count III). *Id.* ¶ 50. Finally, Plaintiffs also seek to recover damages against Nolan (Count IV, Count V). *Id.* ¶¶ 63, 75, 77–80.

### F. Cagney Global's Motion to Dismiss Plaintiffs' First Amended Complaint.

On March 5, 2020, Cagney Global filed a Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. [89]. Cagney Global argues that Plaintiffs' First Amended Complaint is *void ab initio* under applicable case law in the Eleventh Circuit because the filing of the First Amended

---

[3] Cagney Global and Cagney Express are collectively known as "Cagney Global".

Complaint naming Underwriters as an additional Plaintiff violates the Bankruptcy Court's automatic stay. *Id.* at 4-5. Cagney Global also challenges Plaintiffs' state law claims and argues they must be dismissed because they are preempted by the Carmack Amendment. *Id.* at 7-8. Cagney Global further argues that the First Amended Complaint must be dismissed for failure to relate back to the original pleadings because of the addition of Underwriters as Plaintiffs, and the addition of Count II as a new claim. *Id.* at 11. Lastly, Cagney Global disputes IAGEC's standing to bring the action because IAGEC subrogated and assigned its claims to Underwriters. *Id.* at 14.

### G. Plaintiffs' Response in Opposition to Cagney Global's Motion to Dismiss First Amended Complaint

On April 2, 2020, Plaintiffs filed a Response in Opposition to Cagney Global's Motion to Dismiss [First] Amended Complaint. ECF No. [94]. Plaintiffs contest Cagney Global's claims that the filing of the First Amended Complaint naming Underwriters as an additional Plaintiff violates the bankruptcy automatic stay. *Id.* at 2. Instead, Plaintiffs provided the declaration of Plaintiffs' bankruptcy counsel, Buffy Elizabeth Klein ("Ms. Klein"), which asserts that the claim being asserted by Underwriters is a derivative of the claim of IAGEC. *Id.* at 3–4. Plaintiffs also add that the state law claims should not be dismissed as federally preempted because they are plead in the alternative to the Carmack Amendment. *Id.* at 7. Plaintiffs challenge the contention that the First Amended Complaint is time-barred. *Id.* at 9. Instead, Plaintiffs maintain that the addition of an insurer who has paid a loss relates back to the time of filing the original action. *Id.* at 9–10. Plaintiffs also counter Cagney Global's plea for dismissal of the First Amended Complaint on the basis of standing. *Id.* at 12. Plaintiffs assert that IAGEC remained a real party in interest notwithstanding the subject assignment, and that the assignment permitted prosecution of the action in the name of IAGEC. *Id*.

### H. Cagney Global' Reply to Plaintiffs' Response to Cagney's Motion to Dismiss Plaintiff's [First] Amended Complaint

On April 9, 2020, Cagney Global filed a Reply to Plaintiff's Response to Cagney Global's Motion to Dismiss Plaintiffs' [First] Amended Complaint. ECF No. [96]. In this Reply, Cagney Global reaffirms the assertions stated in support of the Motion to Dismiss Plaintiffs' [First] Amended Complaint. In addition to addressing Plaintiffs' responses to Cagney Global's Motion to Dismiss, Cagney Global also makes certain claims which address Plaintiffs' motives in failing to take proper procedural steps to protect such interest. *Id.* at 4. Cagney Global affirms that the bankruptcy order did not include any mention of Underwriters nor of any subrogee or assignee, and thus only permitted IAGEC to obtain relief. *Id.* at 3-4. Cagney Global also asserts that Plaintiffs' Response to the Motion to Dismiss confuses the type of damages that each Plaintiff is seeking; and that there is no qualification in the First Amended Complaint which indicates Underwriters are seeking to sue Cagney Global in name only to proceed against Cagney Global Policy, like IAGEC agreed to do in the Bankruptcy Court. *Id.* at 5-6. Finally, Defendant argue that the declaration of Plaintiffs' bankruptcy counsel is self-serving and should be stricken. *Id.* at 3-4.

### I. Plaintiffs' Sur-Reply Opposing Cagney Global's Motion to Dismiss

On April 17, 2020 Plaintiffs filed a Sur-Reply opposing Cagney Global's Motion to Dismiss. ECF No. [100]. Plaintiffs reasserted their previous arguments but made additional ones with respect to the Bankruptcy Stay. As to that, Plaintiffs state they are not asking for more than the Bankruptcy Court permitted to be sought and add that the stay does not preclude Underwriters' assertion of its claim, which is against Cagney Global's insurers. *Id.* Plaintiffs also refute Cagney Global's assertions that there is confusion about what damages Plaintiffs are seeking. *Id.* Plaintiffs stipulated "that the amount of damages sought by Underwriters in its own right is the amount to

8

which they became subrogated by virtue of their payment to IAG: $1,990,000.00, but as limited by the Bankruptcy Court's partial modification of the stay to Cagney Global's liability insurance limits." *Id.* at 2. Plaintiffs also add that to the extent that the assignment from IAGEC to Underwriters requires IAGEC's claim to be brought by Underwriters, the amount sought for the benefit of IAGEC is "the amount of IAGEC's uncompensated damages… also as limited by the Bankruptcy Court's partial modification of the stay…." *Id*.

## II. ANALYSIS

Before considering the legal challenges posed to the First Amended Complaint, it is important to note that its filing was permitted after briefing and argument before the District Court regarding a number of pending issues, including the scope of IAGEC's and the Underwriter's claims. A reading of the record and of that Hearing transcript makes clear, at least to the undersigned, that the District Court was allowing Plaintiffs an opportunity to start a new, to "reboot," so as to, among other things, clearly articulate the position of each Plaintiff. In addition, Plaintiffs were given leave to do so under a Rule 15 analysis, not by Rule 17 although the Court ultimately ruled that Rule 17 was satisfied. Plaintiffs were also specifically directed to "clearly delineate[] how each claim is structured on behalf of each [P]laintiff." ECF No. [81] at 3.[4] Plaintiffs have now filed the First Amended Complaint on behalf of two parties, IAGEC and the Underwriters, and have set out how the claims as to each are structured.

Specifically, Paragraph 25 states that the damages to IAGEC are $4,359,343.91. Paragraph 26 alleges that pursuant to an insurance policy and a Form of Release and Discharge that was executed by IAGEC, the Underwriters paid the sum of $1,990,000.00, which were the proceeds of

---

[4] Indeed, the motion seeking leave to file the amended complaint, filed before the Hearing and the Court's Omnibus Order, proposed a very different pleading. *See* ECF No. [56–1].

the policy limits minus the deductible. Paragraph 27 specifically addresses how the claims are structed on behalf of Plaintiffs. Paragraph 27 also alleges that "[b]y payment of said sum, in accordance with paragraph 7 of [the Form of Release and Discharge], the Underwriters became partially subrogated to the rights of IAGEC against the Defendants in this action to the extent of Underwriter's payment of $1,990,000.00." No other part of the First Amended Complaint addresses the interests of Plaintiffs. As such, the First Amended Complaint now sets out what each Plaintiff is seeking: IAGEC is pursuing those damages above the $1,990,000.00 that it already received from Underwriters, and the Underwriters are pursuing the $1,990,000.00 that it paid on the claim.[5]

### A. The First Amended Complaint Does Not Violate The Bankruptcy Court's Automatic Stay.

Cagney Global argues that the First Amended Complaint is *void ab initio* because naming Underwriters as an additional Plaintiff is the commencement of an action that violates the bankruptcy automatic stay. ECF No. [89] at 5. Defendant relies on Bankruptcy Code § 362(a)(1) which provides that a filed bankruptcy petition operates as an automatic stay of:

> the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against a debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). A bankruptcy petition also functions as an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C §362(a)(3). If a plaintiff's action violates the automatic stay of

---

[5] In its Sur-Reply, Plaintiff notes that the Underwriters may also be pursuing the entire amount of damages, both on behalf of themselves and as assignees of all of IAGEC's claim. ECF No. [100] at 2. However, the Amended Complaint does not support an alternative basis. It is First Amended Complaint, and not the argument of counsel, that frames the review of the undersigned.

10

a Bankruptcy Court, the action is *void ab initio. S. Dallas Water Auth. V. Guarantee Co. of N. Am., USA,* 767 F. Supp. 2d 1284, 1298 (S.D. Ala. 2011); *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) (citing *Borg-Warner Acceptance Corp. v. Hall*, 685 F. 2d 1306, 1308 (11th Cir. 1982).

Plaintiffs counter that the First Amended Complaint does not violate the bankruptcy stay because the modification order allows IAGEC to seek the same set of damages as are being sought here. ECF No. [94] at 3. As such, because "there is nothing different about the liability, amount of damages, and limits on recovery as a result of Underwriters being named as a Plaintiff in this action," the First Amended Complaint is not subject to a stay and is not void. *Id.*[6]

Here, the matter was stayed for almost two years and is proceeding now as a result of the Bankruptcy Court's order which modified the stay. ECF No. [36–2]. Specifically, the Bankruptcy Court ordered that "the automatic stay is modified to allow IAG[EC] to proceed in the Florida Litigation to liquidate its claim therein and proceed to collect against insurance proceeds only." *Id.* at 2. The District Court, thereafter, granted the motion to lift the stay based on that modification by the Bankruptcy Court. ECF No. [37]. The question for the Court now is whether that modification also allows the claims of the Underwriters to move forward, given that, on its face, only the claims of IAGEC were specifically allowed. Given that, most of the authorities Defendant relies on miss the mark because the Court is not weighting whether the bankruptcy stay provided for by statute applies, but rather it must consider whether the *modification* applies. Indeed, if the

---

[6] Plaintiffs rely on the affidavit of their counsel in support of their position. In its Conditional Motion for Leave to File Supplemental Response, ECF No. [98], Plaintiffs add that the Bankruptcy Trustee agrees with that assessment. The undersigned finds that the affidavit is nothing more than the Bankruptcy lawyer's opinion of the modification, however, it is for the Court to decide what the current modification encompasses.

11

modification does not allow for the First Amended Complaint, the action would be void as Defendant argues.

To be sure, there are a few things that concern the undersigned in allowing the matter to proceed. The Bankruptcy Court's order modifying the stay was an agreed order that was entered as *a result of* an agreement between Defendants and IAGEC. However, at the time of that agreement, Defendant was not aware that IAGEC had assigned its rights as to part of their claim, and therefore, could not properly assert the claim, at least not in its entirety. Specifically, at the time the modification was agreed to by the parties, IAGEC was pursuing damages it was not entitled to pursue in its own name because it had already subrogated and assigned the rights to the $1,990,000.00 to Underwriters. In fact, it's Defendant's position that it had no right to pursue *any* claim because the entirety was assigned to Underwriters. Although that argument has not won the day, as noted below, the fact that the party was negotiating over an amount it had no claim to is difficult to disregard. In addition, the Order that lifted the stay in the instant matter also relied on the fact that the parties did not oppose the lifting of the stay. ECF No. [37] at 4.

Notwithstanding, the undersigned recommends that the Court reject Defendants' arguments and allow the matter to proceed. There is no dispute that the damages at issue here are the same as those the Bankruptcy Court was aware of and was allowing IAGEC to pursue. The issue is whether the additional party, Underwriters, defeats the Court's jurisdiction because they were not mentioned in the modification order. However, the fact that Underwriters are a party now was by decision of the District Court. Specifically, this Court found that those damages should be pursued by IAGEC *and* Underwriters under a Rule 15 analysis, but only after noting that the Rule 17 ratification was sufficient. ECF No. [81] at 3. The fact that the Court chose a different route to more clearly proceed with the pleadings should not now serve as a bar to the

12

action.[7]  As such, the undersigned recommends that the matter proceed under the modification that has already been permitted by the Bankruptcy Court.

### B.  Plaintiffs' State Law Claims Are Preempted By The Carmack Amendment.

Defendant argues that Counts II and III assert state law causes of action that are preempted by the Carmack Amendment.  ECF No. [89] at 7–9.  Plaintiffs responded that the state law claims should not be dismissed as preempted by the Carmack Amendment because they are pleaded in the alternative.  ECF No. [94] at 7.  Because Cagney Global has not conceded that it is subject to liability under the Carmack Amendment, Plaintiffs argue that they would be left without a remedy if the Court or jury found that the Carmack Amendment did not apply.  *Id.*

The Carmack Amendment, 49 U.S.C. §14706 (1994), standardizes and creates a uniform rule for carrier liability in the transportation of goods in interstate commerce. *Smith v. United Postal Service*, 296 F.3d 1244, 1246 (11th Cir. 2002) (citing *New York, New Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953); *Adams Express Co. v. Croninger*, 226 U.S. 491, 506 (1913)).  The congressional action is "paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transactions." *Adams Express Co.*, 226 U.S. at 505.  "To accomplish the goal of uniformity, the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods."  *Smith v. UPS*, 296 F.3d 1244, 1246

---

[7] Plaintiffs' reliance on *Tucker v. Am. Int'l Grp., Inc.*, 745 F. Supp. 2d 52 (D. Conn. 2010), ECF No. [100], however, is misplaced.  In *Tucker*, an action against an insurer was allowed despite the stay from the bankruptcy court.  The court's holding was that the defendant was afforded the protection of the bankruptcy stay, but that its insurance company could not benefit from that protection because it was not the party in bankruptcy.  Here, the action is not against Cagney Global's insurer, it is against Cagney Global, the parties who now enjoy the protection afforded by the bankruptcy action.  Although the Bankruptcy Court's modification gives "IAG[EC] the ability to pursue claims against the underwriters under the insurance contracts in the event insurance coverage is denied," ECF No. [36–2] at 2, what is at issue before this Court at this stage is whether the modification allows Underwriters to pursue claims against Cagney Global, not whether Underwriters or IAGEC can pursue Cagney Global's underwriters.

13

(11th Cir. 2002). The Eleventh Circuit has held that "only claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption." *Id.* at 1248–49. Indeed, "separate and distinct conduct … must exist for a claim to fall outside the preemptive scope of the Carmack Amendment." *Id.* at 1249.

Here, Plaintiffs' state law claims, Counts II and III, are preempted by the Carmack Amendment. Both counts are not "based on conduct separate and distinct from delivery, loss of, or damage to goods," as described in *Smith*, 296 F.3d at 1246, but rather, are squarely premised on allegations involving the transportation of goods in interstate commerce. ECF No. [84] ¶ 11. Specifically, Plaintiffs are seeking to hold Defendants liable for the damages caused to the Engine during interstate transportation from Michigan to Florida. *Id.* As such, Plaintiffs' state law claims, Counts II and III, are preempted by the Carmack Amendment.

Plaintiffs' argument that these counts are not preempted because they are pled in the alternative also fails. Plaintiff relies on *Pizzo v. Bekin Van Lines, Co.*, 258 F.3d 629 (7th Cir. 2001), in arguing that the state law claims should not be dismissed as preempted by the Carmack Amendment because it is pled in the alternative. ECF No. [94] at 8. However, the Court does not find *Pizzo* to be persuasive. In *Pizzo,* the court determined that the Carmack Amendment should not have been dismissed for failure to satisfy the minimum required amount in controversy because there was sufficient information pled that contested the amount at issue. *See* 258 F.3d at 635. The reasoning in *Pizzo* does not concern the preemption of state-law claims concerning interstate transportation of goods and is unpersuasive. *Id.* As Defendant notes, the alternative pleading the *Pizzo* court was allowing was the Carmack claim as to one party and a fraud claim as to another party, as alternate theories of recovery not as an alternative pleading as is being presented here. ECF No. [96] at 7. Indeed, to allow the pleading in the alternative would effectively undermine

the purpose of the Carmack Amendment which was to federally preempt these very state law claims.

### C.  IAGEC Has Standing Because It Is A Real Party In Interest.

Cagney Global argues that since IAGEC subrogated and assigned the claims to another entity, in this case Underwriters, IAGEC is no longer the real party in interest and no longer has Article III standing to pursue the claim.  ECF No. [89] at 12–14.  Defendant rely on the "Subrogation Receipt" clause of the Form of Release and Discharge states:

> By way payment of the Final Net Amount of US $1,990,000.00 (ONE MILLION NINE HUNDRED NINETY THOUSAND UNITED STATES DOLLARS AND ZERO CENTS) and to the extent thereof, Insurers are subrogated to all rights of IAG ENGINE CENTER CORP. in respect of the damage to the Aircraft in the Incident and are entitled to use the name of IAG ENGINE CENTER CORP. and to make any claims and bring any actions of whatsoever natures and however arising out of the Incident against any person including any corporation, body of persons unincorporated, or Government agency or otherwise who shall be or may be liable for the Incident and IAG ENGINE CENTER CORP. hereby warrants that no settlement has been made with any such person relating to the damage in the Incident. If, and to the extent that, the warranty contained in this paragraph is breached, Insurers will be entitled to recover losses they may have otherwise recovered from third parties form the party breaching said warranty.

ECF No. [84] at 32; ECF No. [89-1] at 14.

Plaintiffs argue that they have standing because although Underwriters paid a portion of its claim against Defendant, this does not divest IAGEC of standing to prosecute the balance of its claims as a real party in interest.  The First Amended Complaint alleges that IAGEC only partially subrogated its rights to Underwriters.  ECF No. [84] at ¶ 27.  Specifically, they allege that IAGEC suffered a loss in the amount of $4,359,343.91, of which Underwriters paid $1,990,000.00 which represented the policy limits of $2,000,000.00 less the deductible of $10,000. *Id.* at ¶ 25–26.  , Because Underwriters only paid a portion of the loss, IAGEC retained a substantive right to pursue those damages over and above the amount paid by Underwriters.  In support of their position, they

15

cite the settlement clause above but argue that the term "to the extent thereof" makes clear that the subrogation is only as to the amount paid by Underwriters.

An assignment of rights to pursue a claim against a third party to another removes the assignor's rights to sue the third party because the assignment transfers all rights in the thing assigned. *See Hansen v. Wheaton Van Lines, Inc.*, 486 F. Supp. 2d 1339, 1346 (S.D. Fla. 2006) (mentioning *Lawyers Title Insurance Co., Inc. v. Novastar Mortgage, Inc.*, 862 So.2d 793, 798 (Fla. 4th DCA 2004); and *Rose v. Teitler*, 736 So.2d 122, 122 (Fla. 4th DCA 1999)). When an insurance company pays an entire loss suffered by the insured, it is the only real party in interest and consequently must sue in its own name; however, "if the insurer '[pays] only part of the loss, both the insured and insurer … have substantive rights against the tortfeasor which qualify them as real parties in interest.'" *Phoenix Ins. Co. v. JD & Sons, Inc.*, No. 8:14-CV-2271-T-35MAP, 2015 WL 12861163, at *2 (M.D. Fla. Feb. 2, 2015) (quoting *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380-81 (1949)). However, when an insurer only pays part of a loss, both the insured and insurer are parties in interest. *Id.* (holding that since an insurer paid only part of the loss, both insured and insurer are real parties in interest).

Here, Plaintiffs argument was considered and accepted by the District Court when the Court granted Plaintiffs the right to amend with both IAGEC and Underwriters being allowed to proceed. ECF No. [85].[8] The Amended Complaint, in Paragraph 27, clearly sets out their position. There are clearly two plaintiffs now: (1) IAG, seeking all the damages outside of those that were

---

[8] Defendant points to Plaintiffs' statement in the opposition that "the release reflects an assignment of all of IAGEC's rights against Defendant–not just the rights to the $1.99 million paid by insurance," ECF No. [94] at 14, as a concession that should not be ignored. ECF No. [96] at 8. No doubt some of Plaintiffs' arguments appear to contradict other arguments, however, the undersigned's reading of the Amended Complaint is that the subrogation and/or assignment of claims is only as to the payment that was made by the Underwriters.

16

subrogated and assigned to Underwriters; and (2) the Underwriters, who seek the damages for the claim that was subrogated and assigned to them, the $1,990,000.00 amount it paid. As such, IAGEC has standing to pursue the claim outlined in the First Amended Complaint because it did not assign all its rights, it only assigned those to the extent that the Underwriters paid.

### D. Underwriters' Claims Are Not Time-Barred Because They Relate Back To The Original Complaint.

Cagney Global argues that the First Amended Complaint cannot relate back as required by Federal Rule of Civil Procedure 15(c) because: (1) it alleges a new cause of action, Liability of Cagney Global for Inherently Dangerous Activity (Count II), of which Cagney Global was not on notice in the original pleadings, and (2) because Plaintiffs' Original Complaint was filed by IAGEC alone as a strategic decision which involved more than a misnomer. ECF No. [89] at 11.[9] Therefore, Cagney Global argues that since Underwriters' claims do not relate back to the original pleadings, they are time-barred under the statute of limitations. *Id.* Plaintiffs, however, argue that the Amended Complaint is not time-barred because the substitution of an insurer who has paid a loss and is subrogated to the claims of a party who had timely sued does not create a new cause of action and thus the claims relate back to the original pleadings. ECF No. [94] at 9. Plaintiffs also rely on the District Court's Omnibus Order to support their argument that the Original Complaint put Cagney Global on notice of any claim that could be raised by Underwriters. *Id.* at 11.

An amended complaint relates back when adding a new plaintiff if: "(1) the provisions of Rule 15(c)(1)(B) are satisfied; (2) the amendment does not prejudice the defendant; and (3) the original complaint provided the defendant with adequate notice of the claims raised by the newly-

---

[9] Given that Plaintiffs' state law claims are preempted by the Carmack Amendment, the Court does not further address whether Count II relates back to the date of the Original Complaint.

17

added plaintiff." *Reasoner v. All Seasons Pool Serv., Inc.*, No. 606CV-1819-ORL-19DAB, 2007 WL 4326806, at *3 (M.D. Fla. Dec. 7, 2007) (citing *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F. 3d 1113, 1132 (11th Cir. 2004)).[10]  Federal Rule of Civil Procedure 15(c)(1)(B) provides that if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading" the amendment to the pleading relates back to the date of the original pleading.  Fed. R. Civ. P. 15(c)(1)(B).  Rule 15 also requires that "the party to be brought in by amendment … knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010); *see also Walker v. Fulton Cty Sch. Dist.*, 624 F. App'x 683, 686 (11th Cir. 2015) (reasoning that for an amended pleading to properly relate back to the original pleading, the original complaint must give the defendant notice of the claim asserted in the amendment).  In a situation where an insurer is substituted in the place of the insured who timely filed a complaint, it relates back to the original complaint if the claim asserted after the substitution "arose out of the conduct, transaction, or occurrence set forth in the original complaint." *Am. Fid. & Cas. Co. v. All Am. Bus Lines*, 190 F.2d 234, 236 (10th Cir. 1951)

In the present case, the addition of Underwriters as Plaintiffs relates back and does not change any substantive right of Plaintiffs.  First, the addition of Underwriters as Plaintiffs in the First Amended Complaint does not modify the claims which "arose out of the conduct, transaction, or occurrence set out … in the original pleading." *See* Fed. R. Civ. P. 15(c); *see also* ECF No. [85] at 71.  The allegations of the First Amended Complaint arose out of the same occurrence as was set out in the Original Complaint because both are claims for the destruction of the Engine

---

[10] In the Omnibus Order, the District Court relied on this standard when addressing Cagney's concern that an "Amended Complaint that added Underwriters as a plaintiff would relate back to the original complaint," to which the Court found that "it would." ECF No. [81] at 2.

18

while in transport from Michigan to Florida. *See* ECF Nos. [1-1] ¶ 6, [84] ¶ 11. Since the only claims permitted to proceed against Cagney Global is the Carmack Amendment Claim (Count I), and it is the same claim asserted and described in the Original Complaint, Cagney Global had sufficient notice of the claims and therefore Cagney Global will not be unduly prejudiced by the addition of Underwriters as a party. *See Reasoner*, 2007 WL 4326806, at *3-4 (finding that the addition of a plaintiff did not prejudice the defendant and that since all elements of the test are satisfied, the action relates back to the original pleading). Indeed, Omnibus Order noted that the Original Complaint put Cagney Global on notice of any claim that could be raised by Underwriters. ECF No. [81] at 3. Finally, Cagney Global is not prejudiced by the addition of Underwriters as Plaintiffs. Indeed, the District Court already found that the matter related back, both at the Hearing, ECF No. [85] at 71, and in its Omnibus Order. ECF No. [81] at 2.

### III.  RECOMMENDATION

Based on the foregoing, it is hereby **RECOMMENDED** that Cagney Global's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. The undersigned **RECOMMENDS** that Counts II and III against Defendant be dismissed because they are preempted by the Carmack Amendment and all the remaining claims may proceed.

### II.  OBJECTIONS

Pursuant to Local Magistrate Rule 4(b) and Federal Rule of Civil Procedure 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Any request for an extension of this deadline must be made within five (5) calendar days from the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the report and shall bar the parties from challenging

on appeal the District Judge's Order based on any factual or legal conclusions included in this Report and Recommendation to which the parties failed to object. 28 U.S.C. § 636(b)(1); *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers this 4th day of September, 2020.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**