## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-CIV-23271-RAR

**IAG ENGINE CENTER CORP.**, *et al.,*

    Plaintiffs,

v.

**CAGNEY GLOBAL LOGISTICS INC.**, *et al.,*

    Defendants.

_____/

### ORDER AFFIRMING AND ADOPTING IN PART REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon United States Magistrate Judge Jacqueline Becerra's Report and Recommendation [ECF No. 110] ("Report"), filed on September 4, 2020. The Report recommends that the Court grant in part and deny in part Defendant Cagney Global Logistics Inc.'s Motion to Dismiss Plaintiff's Amended Complaint with Prejudice [ECF No. 89] ("Motion"). Each party filed objections to the Report [ECF Nos. 111, 112] and responses to their counterpart's objections [ECF Nos. 113, 114]. Having reviewed the Report, objections, and responses, conducted a *de novo* review of the record, and being otherwise fully advised in the premises, it is

**ORDERED AND ADJUDGED** as follows: 1) the Report [ECF No. 110] is hereby **AFFIRMED AND ADOPTED IN PART** as supplemented herein; and 2) Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice [ECF No. 89] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

## BACKGROUND

While the facts of this case are rather straightforward, the procedural history is anything but. The Court will thus recount for posterity the procedural background on which Defendant's Motion turns. This action involves claims by Plaintiffs IAG Engine Center Corp. ("IAG") and certain subrogating underwriters subscribing to a policy of insurance (UM No. B0572NA14L060) effected through Tyser North America ("Underwriters") against Defendants Cagney Global Logistics, Inc. ("Cagney") and Nolan Transportation Group ("Nolan" and together with Cagney, "Defendants") regarding damages to a GE CF6-80C2 Jet Aircraft Engine that occurred during interstate transportation on July 20, 2015. *See* First Am. Compl. [ECF No. 84].

On October 27, 2017, Cagney Global filed a Notice of Bankruptcy and Automatic Stay [ECF No. 32], informing the Court that it had filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas ("Bankruptcy Court"), under Case No. 17-33935-HDH-7. After determining that the entire action should be stayed, the Court entered an order staying all proceedings in this matter. [ECF No. 33].

On February 27, 2018, IAG filed a proof of claim in the Cagney bankruptcy case for $4,359,343.91 for the damages to the engine. On March 1, 2019, IAG filed an Amended Motion to Partially Lift the Automatic Bankruptcy Stay and to Re-open the Case [ECF No. 36] after IAG and Cagney Global came to an agreement with the bankruptcy trustee ("Trustee") to allow IAG to pursue its claim against Cagney. The order entered by the Bankruptcy Court stated that "the automatic stay is modified to allow IAG to proceed in the Florida Litigation to liquidate its claim therein and proceed to collect against insurance proceeds only." [ECF No. 36-2] ("Agreed Order") at 2. On March 1, 2019, the Court granted the motion to lift the stay and reopened proceedings in this case. [ECF No. 37].

Significantly, in 2015, IAG executed a settlement agreement with its insurers—Underwriters—under which IAG assigned to Underwriters at least some of its rights to bring claims regarding the incident at issue. [ECF 89-1]. In pertinent part, that agreement states:

SUBROGRATION RECEIPT

By way of payment of the Final Net Amount of US $1,990,000.00 (ONE MILLION NINE HUNDRED NINETY THOUSAND UNITED STATES DOLLARS AND ZERO CENTS) and to the extent thereof, Insurers are subrogated to all rights of IAG ENGINE CENTER CORP. in respect of the damage to the Aircraft in the Incident and are entitled to use the name of IAG ENGINE CENTER CORP. and to make any claims and bring any actions of whatsoever nature and however arising out of the Incident against any person including any corporation, body of persons unincorporated, or Government agency or otherwise who shall be or may be liable for the Incident and IAG ENGINE CENTER CORP. hereby warrants that no settlement has been made with any such person relating to the damage in the Incident. If, and to the extent that, the warranty contained in this paragraph is breached, Insurers will be entitled to recover losses they may have otherwise recovered from third parties from the party breaching said warranty.

*Id*. at ¶ 7. There is no indication in the record that IAG advised the Bankruptcy Court of any assignment of its rights, nor did Underwriters submit a proof of claim in Cagney's bankruptcy. Cagney represented to the Court that it learned for the first time of such an assignment of rights through IAG's Rule 26 disclosures in this case. Mot. at 3.

On December 11, 2019, IAG filed a Notice of Ratification [ECF No. 71] ("Notice"), providing notice to Underwriters and representing, *inter alia*, that this action "has since its inception, been brought on behalf of IAG[] in its individual capacity and the [Underwriters], through IAG[]." *Id*. at 3. Shortly thereafter, on January 21, 2020, Cagney filed a Motion to Strike IAG's Notice of Ratification and Dismiss Plaintiff's Complaint [ECF No. 75], arguing that IAG did not have standing to pursue this action on behalf of Underwriters nor was it a proper party under Rule 17 of the Federal Rules of Civil Procedure. On January 21, 2020, IAG filed an Amended Motion for Leave to File a First Amended Complaint [ECF No. 77], wherein it sought

to join the third-party Defendant Nolan and join Underwriters as a plaintiff.  IAG also filed a Supplemental Notice of Ratification of Plaintiff's Standing by Purported Real Party in Interest [ECF No. 78], reasserting its standing to bring an action on behalf of Underwriters, ratifying IAG's capacity to bring this action in its name, *nunc pro tunc* to the date of the case's filing, and seeking to establish IAG as the real party in interest in this matter.  *Id*. at 3-4.

To reboot this litigation and gain a clearer understanding of each party's claims, the Court heard argument on the outstanding motions on January 23, 2020.  Tr. of Hr'g Held 1/23/20 [ECF No. 85] ("Tr.").  The Court then issued an Omnibus Order [ECF No. 81], which, *inter alia*, granted IAG's Amended Motion for Leave to File an Amended Complaint, finding that the amended complaint adding Underwriters as a plaintiff would relate back to the original Complaint.  *Id*. at 2. The Omnibus Order also instructed IAG that the new pleading must ensure the claims clearly delineate which party is seeking what amount in damages.  *Id*. at 3.  Finally, and most importantly for purposes of the instant decision, the Omnibus Order made clear that "any Defendant may move to dismiss the Amended Complaint—or any claim therein—if it fail[ed] to comply with relevant pleading standards."  *Id*.

IAG and Underwriters filed their First Amended Complaint on February 7, 2020, which avers that IAG is pursuing those damages above the $1,990,000.00 that it already received from Underwriters, and Underwriters are pursuing the $1,990,000.00 that it paid on the claim.  [ECF No. 84].  The First Amended Complaint alleges five causes of action: three against Defendant Cagney—which are the subject of this opinion—and two against Defendant Nolan.  First, Plaintiffs allege that Cagney is strictly liable to IAG under the Carmack Amendment for the amount of its losses over and above the amount paid to it by Underwriters; and strictly liable to Underwriters for the amount they paid to IAG (Count I).  *Id*. ¶¶ 34–35.  Second, Plaintiffs allege Cagney is liable

for damages based upon Cagney's actions engaging in an inherently dangerous activity (Count II). *Id*. ¶ 38.  And third, Plaintiffs allege Cagney was negligent through its employees and agents: Nolan, AJS Transport, and the driver of the truck on which the engine was loaded (Count III).  *Id*. ¶ 50.

On March 5, 2020, Cagney filed its Motion to Dismiss Plaintiffs' First Amended Complaint [ECF No. 89], which argues: 1) Plaintiffs' First Amended Complaint is *void ab initio* under applicable case law in the Eleventh Circuit because the filing of the First Amended Complaint naming Underwriters as an additional plaintiff violates the Bankruptcy Court's automatic stay; 2) Plaintiffs' state law claims must be dismissed because they are preempted by the Carmack Amendment; 3) the First Amended Complaint does not relate back to the original pleadings because of the addition of Underwriters as a plaintiff, and the addition of Count II as a new claim; and 4) IAG does not have standing to bring the action because IAG subrogated and assigned its claims to Underwriters.

Plaintiffs filed their Response in Opposition to Cagney's Global Motion to Dismiss the [First] Amended Complaint on April 2, 2020 [ECF No. 94] ("Response" or "Resp."), and Cagney filed its Reply to Plaintiff's Response on April 9, 2020 [ECF No. 96] ("Reply").  Plaintiffs then filed a Sur-reply on April 17, 2020.  [ECF No. 100].

On April 23, 2020, the Court referred Defendant's Motion to Magistrate Judge Becerra. [ECF No. 101].  On September 1, 2020, Magistrate Judge Becerra issued her Report, in which she concluded: 1) the First Amended Complaint does not violate the bankruptcy court's automatic stay; 2) Plaintiffs' state law claims are preempted by the Carmack Amendment; 3) IAG has standing because it is a real party in interest; and 4) Underwriters' claims are not time-barred because they relate back to the original Complaint.  Accordingly, the Report recommended that

Counts II and III of the First Amended Complaint be dismissed because they are preempted by the Carmack Amendment, while the remaining counts should proceed. *Id.* at 19.

## LEGAL STANDARD

The Court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the Report to which objection is made are accorded *de novo* review so long as those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the Report to which no specific objection is made are reviewed only for clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.,* 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001)*; accord Macort v. Prem, Inc*., 208 F. App'x 781, 784 (11th Cir. 2006).

## ANALYSIS

Plaintiffs filed their Objections to the Report on September 10, 2020 [ECF No. 111] ("Plaintiffs' Obj."), challenging the Report's conclusion that Plaintiffs' state law claims are preempted by the Carmack Amendment because, according to Plaintiffs, IAG has denied that it was acting as a "carrier" under the Amendment. Cagney filed its Objections on September 18, 2020 [ECF No. 112], arguing that the Report erred in concluding that the inclusion of Underwriters in the First Amended Complaint did not violate the bankruptcy's automatic stay. In addition, Cagney objects to the Report's conclusion that Underwriters' claims relate back to the original Complaint, thereby overcoming the statute of limitations. *Id*. at 7-11. The Court will address these objections in turn.

### A. *Plaintiffs' State Law Claims Are Preempted by the Carmack Amendment*

The conclusions of the Report in this regard are adopted in full as supplemented herein. As the Report explained, "the Carmack Amendment preempts state law claims arising from

failures in the transportation and delivery of goods." *Smith v. UPS*, 296 F.3d 1244, 1246 (11th Cir. 2002). Thus, "only claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption." *Id*. at 1248-49. The Report found that both state law claims are "squarely premised on allegations involving the transportation of goods in interstate commerce" and are therefore preempted. Report at 14. Plaintiffs contend that Cagney has taken the position that it was acting as a "broker"—rather than a "carrier"—in the incident at issue, which, if proven, would mean that Plaintiffs' state law claims would not be preempted since they would not be based on the actual interstate transportation of goods. Plaintiffs' Obj. at 2-3.

Plaintiffs' First Amended Complaint belies that position. In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the Court accepts as true all allegations in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*), *abrogated on other grounds by Twombly*, 550 U.S. at 561–63. As we have previously explained, "ordinary preemption asserts state claims have been substantively displaced by federal law[] and is an affirmative defense to the allegations in a complaint." *Reva, Inc. v. Humana Health Benefit Plan of La., Inc.*, No. 18-20136, 2018 WL 1701969, at *5 (S.D. Fla. Mar. 19, 2018) (citing *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352 (11th Cir. 2003)). "Generally, the existence of an affirmative defense will not support a motion to dismiss." *Quiller v. Barclays Am./Credit, Inc*., 727 F.2d 1067, 1069 (11th Cir. 1984). However, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Id*.

Here, the First Amended Complaint states that "[t]his action involves a claim for the

destruction of a [] Jet Aircraft Engine . . . during *interstate transportation* from the State of Michigan to the State of Florida." First Am. Compl. at ¶ 11 (emphasis added). It also states that "[a]t all times material hereto Cagney was acting as an interstate motor carrier subject to [the Carmack Amendment]." *Id*. at ¶ 13. Finally, it alleges that "Cagney loaded the subject [e]ngine on a flatbed truck trailer which . . . resulted in a load that was greater than the legal limit" and that "Cagney's Driver proceeded under the bridge at a high rate of speed, striking the bridge with the [e]ngine and causing irreparable damage to the subject engine." *Id*. at ¶¶ 20, 24. Thus, the face of the First Amended Complaint makes clear that the state law claims "aris[e] from the failures in the transportation and delivery of" the engine and are not "based on conduct separate and distinct from the delivery, loss of, or damage to goods." *Smith*, 296 F.3d at 1246. The state law claims are therefore preempted, and Plaintiffs' objections are overruled.

### B.  The Claims of Underwriters Violate the Bankruptcy Court's Order Granting Relief from the Automatic Stay

The Court declines to adopt the Report's conclusion that the First Amended Complaint does not violate the Bankruptcy Court's automatic stay. When a debtor files a bankruptcy petition, 11 U.S.C. § 362(a) imposes an automatic stay on proceedings against the debtor. "Because a section 362 stay freezes in place all proceedings against the debtor, and because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of any proceeding can derive legitimacy only from the bankruptcy court order." *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 114 (5th Cir. 1987). Accordingly, the determination of whether Underwriters' involvement in this suit violates the automatic stay must begin with a close examination of the order entered by the Bankruptcy Court modifying the automatic stay. "The terms of [the] order modifying the automatic stay must therefore be *strictly construed*." *Id*. (emphasis added); *see also In re Wardrobe*, 559 F.3d 932, 934-35 (9th Cir. 2009)

(same).  Moreover, "an Agreed Order [lifting the automatic stay] is a contract and its interpretation is governed by basic rules of contract construction." *In re Thornburg*, 277 B.R. 719, 726 (Bankr. E.D. Tex. 2002) (citing *In re Continental Airlines Corp.*, 907 F.2d 1500, 1508 n.6 (5th Cir. 1990)).

The Agreed Order was entered by the Bankruptcy Court on January 30, 2019 and stated, in relevant part, "that the agreement of IAG and the Chapter 7 Trustee is approved and the automatic stay is modified to allow IAG to proceed in the Florida Litigation to liquidate its claim therein and proceed to collect against insurance proceeds only." [ECF 36-2] at 2.  This Court must therefore determine what was meant by "allow[ing] IAG to proceed . . . on *its* claim." *Id.* (emphasis added).  Strict construction of the Agreed Order's terms compels the conclusion that the involvement of Underwriters in this suit was not contemplated by the Agreed Order and therefore violates the automatic stay.

The Agreed Order does not mention Underwriters, does not reference any assignment of benefits executed by IAG, and does not authorize any party besides IAG to pursue claims against Cagney.  [ECF No. 36-2].  But more than three years before the Agreed Order was entered, on October 30, 2015, IAG assigned to Underwriters its rights to a portion of the claim against Cagney for damages to the aircraft engine.  *See* Ex. A, Motion [ECF No. 89-1] at 14.  That agreement stated that "to the extent" of the payment of $1,990,000.00 from Underwriters to IAG, Underwriters became "subrogated to all rights of IAG . . . in respect of the damage to the Aircraft in the Incident and [were] entitled to make any claims and bring any actions of whatsoever nature and however arising out of the Incident . . . ." *Id.*  As the Report explained in Section II, C, this agreement reflects *both* an assignment to Underwriters of IAG's rights to sue Cagney (or, theoretically, any third party) for the damages to the engine to the extent of the $1,990,000.00 payment, as well as a subrogation of Underwriters to those rights in place of IAG.  *See Continental*

*Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008) (explaining that "subrogation is a broader concept [than an assignment]" and an assignment of rights is a conventional subrogation agreement).

Because Underwriters were assigned IAG's rights to sue Cagney for the $1,990,000.00, IAG was not able to seek relief from the automatic stay for the prosecution of that claim by Underwriters.  Real-party-in-interest issues arise by application of Rule 17 of the Federal Rules of Civil Procedure, made applicable in bankruptcy by Bankruptcy Rule 7017.  Thus, "[o]nly a 'party in interest' may request relief from the automatic stay." *In re Williams*, 533 B.R. 557, 563 (Bankr. N.D. Tex. 2015) (quoting 11 U.S.C. § 362(d)).[1]  In this regard, "[a] real party in interest is the one that holds a substantive right sought to be enforced" against the debtor.  *In re Crymes*, No. 16-10206-rlj13, Adv. No. 18-01-000, 2018 WL 4006320, at *6 (Bankr. N.D. Tex. Aug. 20, 2018) (citing *U.S. ex. rel Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014)); *see also In re Rice*, 462 B.R. 651, 656 (6th Cir. BAP 2011) ("[As] to the issue of who is a 'party in interest' for purposes of § 362(d), courts [] focus the definition on parties who are entitled to enforce the obligation.") (collecting cases).  *Accord In re Enron Corp. Secs., Derivative & ERISA Litig.*, 279 F.R.D. 395, 409 (S.D. Tex. 2011) ("A plaintiff that does not possess a right under the substantive law is not the real party in interest with respect to that right and may not assert it.") (citing *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir.1969)).

"Whether a person is the real party in interest, with respect to a particular claim, is determined by state and federal substantive law." *Crymes*, 2018 WL 4006320, at *6.  The Carmack Amendment does not itself provide a right for a third party to sue on another's behalf, so when

---

[1]  The Agreed Order was entered by the Bankruptcy Court for the Northern District of Texas, so this Court looks to case law from the United States Court of Appeals for the Fifth Circuit regarding the Agreed Order's construction and application.

these claims are assigned, courts look to the state law governing the assignment to determine who holds the substantive right to sue. *See Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC*, No. No. 3:12–CV–0149–D, 2013 WL 3834626, at *2 n.2 (N.D. Tex. July 25, 2013) (looking to Texas law to determine who was the party in interest to assert a claim under the Carmack Amendment because Texas law governed the assignment of the claim); *Hansen v. Wheaton Van Lines, Inc*., 486 F. Supp. 2d 1339, 1346 (S.D. Fla. 2006) (looking to Florida law to determine the effect of an assignment of a claim under the Carmack Amendment). *Accord ECI Mgmt. Corp. v. Scottsdale Ins. Co.*, 23 F.3d 354, 356 (11th Cir. 1994) ("Real party in interest analysis [under Fed. R. Civ. P. 17] is a matter of federal procedure, but we refer to state law to identify the true owner of the legal interest at issue.").

Florida law governs the subrogation agreement between IAG and Underwriters under the applicable choice of law provision. [ECF No. 89-1] at 2. Under Florida law, "once transferred, the assignor no longer has a right to enforce the interest because the assignee has all rights to the thing assigned." *Continental Cas. Co.*, 974 So. 2d at 376; *see also Hansen*, 486 F. Supp. 3d at 1346 ("Once the assignor assigns its rights to pursue a claim against a third party to another, the assignor retains no right to sue the third party. An assignment transfers all rights in the thing assigned.") (citing *Lawyers Title Ins. Co., Inc. v. Novastar Mortg., Inc.*, 862 So. 2d 793, 798 (Fla. 4th DCA 2004); *Rose v. Teitler*, 736 So. 2d 122, 122 (Fla. 4th DCA 1999)). Therefore, IAG was not a party in interest able to seek relief from the stay to pursue Underwriters' claim. In other words, IAG's claim in this litigation, which is all that was permitted to proceed by the Agreed Order, did *not* include Underwriters' claim for $1,990,000.00.[2]

---

[2]  The parties do not dispute which law applies, but the Court notes out of an abundance of caution that even an application of Illinois law pursuant to the choice of law provision in the Bill of Lading, *see* Ex. C, First Am. Compl. [ECF No. 84], would result in the same conclusion. *See Cars R Us Sales and Rentals,*

Two key facts establish this conclusion.  The first is that IAG had assigned these rights to Underwriters *before* the Bankruptcy Court granted relief from the automatic stay.  In *In re Noone*, for example, the bank in possession of the debtor's mortgage successfully sought relief from the automatic stay to foreclose on the debtor's property.  188 B.R. 710, 711 (Bankr. D. Mass. 1995).  Then, prior to the foreclosure sale, the bank assigned the mortgage to a third party, who proceeded to conduct the foreclosure sale.  *Id*.  The bankruptcy court rejected the debtor's argument that the assignee was required to return to the bankruptcy court to seek relief from the automatic stay, concluding that "[a]s an assignee, he was in effect subrogated to the rights of the mortgagee."  *Id*. at 712.  Here, by contrast, IAG assigned its rights to the claim for $1,990,000.00 to Underwriters *before* it sought relief from the automatic stay.  Underwriters subrogated to the rights of IAG at the time of the assignment, which did not include the relief from the automatic stay.

Because this claim was assigned before the bankruptcy, the relief in the Agreed Order could have easily been granted in favor of "IAG and any subrogee or assignee."  Alternatively, the parties could have sought clarification from the Bankruptcy Court to ensure the Agreed Order applied to IAG's subrogees or assignees.  Indeed, because the language of orders granting relief from the automatic stay must be strictly construed, bankruptcy courts frequently amend such orders to clarify confusion as to whom the order applies.  *See, e.g., In re Boateng*, No. 17-26830-TJC, 2019 WL 1574285, at *1 (Bankr. D. Md. Apr. 10, 2019) ("The corrected order will clarify that the relief in the Lift Stay Order runs to the party who sought stay relief and its assignees, successors, and agents.").

---

*Inc. v. Ford Motor Co.*, No. 08 C 50270, 2009 WL 1703123, at *2 (N.D. Ill. June 18, 2009) ("In Illinois, an insurer with subrogation rights to an insured's claim 'owns' a claim and is a real party in interest.") (citing *Brook Inns, Inc. et al. v. S & R Hi–Fi and TV*, 618 N.E.2d 734, 743 (Ill. App. Ct. 1993)).

The second fact critical to the Court's conclusion is that the Bankruptcy Court was apparently unaware of the assignment to Underwriters.  Multiple courts have limited the scope of orders granting relief from the automatic stay to claims or proceedings which were directly considered and addressed by the bankruptcy court.  In *Nugent v. Am. Broad. Sys.*, 1 Fed. Appx. 633 (9th Cir. 2001), the creditors obtained a stay modification order that allowed their "district court litigation to 'proceed to final liquidation.'"  *Id*. at 635.  At the time the bankruptcy court issued the order, the creditors' complaint pending in the district court sought only damages and an accounting of stock—but after the bankruptcy court granted the order, the creditors amended the complaint to include a constructive trust claim.  *Id.*  The Ninth Circuit affirmed "the bankruptcy court's conclusion that the automatic stay was modified only as to the claims that were actually pending in the district court litigation as of the date of the order modifying the stay."  *Id.*  The court noted that the creditors had "fail[ed] to explain how the bankruptcy court could lift the automatic stay as to the constructive trust claim when, at the time of its order, *the bankruptcy court had no idea that the claim existed*."  *Id.* at 635–36 (emphasis added); *see also Wardrobe*, 559 F.3d at 937 (finding "that an order granting limited relief from an automatic stay to allow a creditor to proceed to judgment in a pending state court action is effective only as to those claims actually pending in the state court at the time the order modifying the stay issues, or that were expressly brought to the attention of the bankruptcy court during the relief from stay proceedings.").

Similarly, in *In re Thornburg*, the bankruptcy court entered an agreed order between the debtor and creditor that allowed the creditor to "have a hearing in state court on her Motion for Enforcement" respecting the parties' final decree of divorce.  277 B.R. at 726.  After the hearing, the state court made factual findings and entered judgment against the debtor, and the bankruptcy court held that these later acts violated the automatic stay.  *Id.*  Noting that an agreed order is a

contract, the court held that its terms were "unambiguous" and "cannot be broadened retroactively." *Id*.  Because the terms of the order controlled, the creditor's argument that she thought the relief order allowed her to prosecute her motion to judgment was of no consequence. *Id*.

Like the addition of the new claim in the amended complaint in *Nugent*, the addition of Underwriters in this lawsuit violates the automatic stay because the Bankruptcy Court was not aware of Underwriters' existence in this lawsuit at the time it entered the Agreed Order.  And like the agreed order in *Thornburg*, the Agreed Order here is unambiguous: "[t]he automatic stay is modified to allow IAG to proceed in the Florida Litigation to liquidate *its* claim therein and proceed to collect against insurance proceeds only."  [ECF No. 36-2].  For the reasons explained above, "its claim" did not include the portion of the claim assigned to Underwriters.

Because the terms of the Agreed Order control, IAG's reliance on the affidavit of its bankruptcy counsel in support of its argument that the Agreed Order encompassed Underwriters' claims is unpersuasive.  [ECF No. 94-1].  IAG argues that the inclusion of Underwriters does not violate the automatic stay because their claims do not add anything to the total amount the Bankruptcy Court allowed to proceed.  *See* Resp. at 6-7.  To be sure, this argument is appealing on its face: if the Bankruptcy Court allowed a claim for roughly $4.4 million in damages to proceed, why does it matter which party is pursuing various portions of those damages?  But the Agreed Order is a contract.  Cagney was unaware of the existence of Underwriters when it agreed to that contract, as was the Bankruptcy Court when it entered the Agreed Order.  Thus, the inclusion of Underwriters was clearly not contemplated by the Agreed Order, and it is not for this Court to decide that their inclusion is meaningless.  "This Court must find that the order on the

motion for relief from the automatic stay granted the relief requested . . ., no more no less." *Thornburg*, 277 B.R. at 727.

While this may seem overly technical, strictly construing orders granting relief from the automatic stay is necessary to ensure an orderly bankruptcy process.  This rule "discourages creditors from misrepresenting the actual or potential scope of the cause of action pending before [another] court and thereby tends to ensure that the bankruptcy court is fully informed as to the potential effect of any order granting relief from the automatic stay.  In this way, it furthers the purpose of the automatic stay."  *Wardrobe*, 559 F.3d at 936.

The Report concluded that the inclusion of Underwriters does not violate the automatic stay because this Court allowed IAG to amend its complaint to add Underwriters as a party.  Report at 12-13.  Therefore, in Magistrate Judge Becerra's view, "[t]he fact that the Court chose a different route to more clearly proceed with the pleadings should not now serve as a bar to the action."  *Id*. However, the Court allowed IAG to amend its complaint to "reboot" the action and rectify then-existing confusion as to which party was seeking which damages.  *See* Tr. at 90:21-23 ("Get both parties in here so there are no concerns about who is doing what and who is claiming what and how we're doing it and how we're recovering."); *id*. at 88:6-12 ("[I]t seems to me that I should give them an amendment and let it be very clear what each party is pursuing or if they're interchangeably pursuing the same.  That may give us a roadmap.  What I [was] hoping to do was [] clean up the pleadings in that regard so we know it is not a moving target."); *id.* at 90:6-13 ("I'm going to opt to go through Rule 15 and allow there to be the alternative mechanism of having both [] entities, [] IAG and [U]nderwriters, listed as plaintiffs.  I think that [] doing so . . . will clearly delineate how all claims are being structured between both plaintiffs so that we can get a sense of what exactly is the claim here.").  In doing so, the Court made clear that it was not deciding the

propriety of Underwriters pursuing damages in this action—an issue that had yet to be fully briefed

for the Court:

> I think the easiest thing to do is let them plead it out and then perhaps what will happen is if there is a motion to dismiss, the way in which you will be able to structure it, so you're not prejudiced as you were somewhat today with things on the fly, you will be able to look at it with one vision and then reassert some of the arguments today but maybe in a different light seeing the new complaint by being able to say to me, Judge, now looking at how it's pled, we would say that one of these two parties must be dismissed by virtue of the four corners of [the subrogation agreement].

*Id.* at 92:14-23; *see also id.* at 47:13-16 ("One . . . concern [is] that [U]nderwriters [were] never

really given leave to pursue that claim from the bankruptcy.  I think that's just never been

addressed.  The only thing against Cagney was IAG claims, right?  So that would be problem

one.").  Accordingly, by allowing IAG to amend its complaint, the Court did not foreclose

Cagney's ability to argue—as they have done successfully—that Underwriters must be dismissed

from this action due to the violation of the automatic stay.

However, that conclusion does not compel the complete dismissal of this action.  Actions

taken in violation of the automatic stay are void and without effect.  *United States v. White*, 466

F.3d 1241, 1244 (11th Cir. 2006).  Tellingly, though, Cagney cites no authority for its proposition

that because "all counts of the First Amended Complaint are brought jointly by the Plaintiffs, the

First Amended Complaint must be dismissed."  Reply at 4.  That is because "[a]ll proceedings in

a single case are not lumped together for purposes of automatic stay analysis."  *Maritime Elec. Co.*

*v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991).  Instead, "[m]ultiple claim and multiple

party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and

third-party claims are treated independently when determining which of their respective

proceedings are subject to the bankruptcy stay."  *Id.*; *see also In re Hall*, 304 F.3d 743, 746 (7th

Cir. 2002); *Parker v. Bain*, 68 F.3d 1131, 1137 (9th Cir. 1995); *In re Duncan*, 987 F.2d 490, 491 n.2 (8th Cir. 1993).  Because "[m]ultiple claims within a single case are disaggregated for purposes of automatic stay analysis[,] . . . [w]ithin a single case, some actions may be stayed, others not." *In re Choice ATM Enters., Inc.*, Case No. 14–44982–DML, 2015 WL 1014617, at *2 (Bankr. N.D. Tex. Mar. 4, 2015) (citing *Maritime*, 959 F.2d at 1204).  Thus, the Court disaggregates IAG's claims from those of Underwriters and will allow the former to proceed while dismissing the latter as violative of the automatic stay.

## CONCLUSION

Underwriters' participation in this lawsuit was not contemplated by the relief granted from the automatic stay by the Bankruptcy Court for the Northern District of Texas.  Therefore, their participation violates the automatic stay unless and until they receive authority to proceed from that court.  IAG is permitted to proceed on its claim, which is limited to the amount of its losses over and above the $1,990,000.00 paid to it by Underwriters.  Because Underwriters are not permitted to proceed, the Court need not decide whether Underwriters' claims relate back to the original complaint so as to avoid the applicable statute of limitations.

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Report [ECF No. 110] is **AFFIRMED AND ADOPTED** as supplemented herein. Specifically, the Report is affirmed and adopted as to its conclusions regarding preemption of IAG's state law claims (Section II, B) as well as its conclusions regarding IAG's standing as the real party in interest to pursue the claims not assigned to Underwriters (Section II, C).  The Court declines to adopt the Report's conclusions regarding the applicability of the automatic stay to Underwriters' claims (Section II, A), as well as its conclusions regarding Underwriters' claims

relating back to the original complaint (Section II, D), which have been rendered moot by the dismissal of Underwriters from this action.

2. Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice [ECF No. 89] is **GRANTED IN PART AND DENIED IN PART**. Counts II and III of Plaintiffs' First Amended Complaint [ECF No. 84] are **DISMISSED** *with prejudice* because they are preempted by the Carmack Amendment. And Underwriters are hereby **DISMISSED** as a party to this lawsuit. IAG may proceed on Count I against Cagney but only to the extent of its losses over and above the $1,990,000.00 paid to it by Underwriters. IAG may also proceed with Counts IV and V, which are against Defendant Nolan and were not the subject of the Motion to Dismiss at issue here.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 17th day of November, 2020.

 

 

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:    Counsel of record
       Magistrate Judge Jacqueline Becerra